**DISTRICT OF OREGON**
**F I L E D**
**May 23, 2024**
**Clerk, U.S. Bankruptcy Court**

Below is an order of the court.

*[signature]*

TERESA H. PEARSON
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 23-32834-thp11 |
| Magno, L.L.C. | **ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO 11 U.S.C. § 1191(b)** |
| Debtor. | |

Debtor's Plan of Reorganization (March 5, 2024) [ECF No. 63/65] (the "Plan") came on for hearing on April 30, 2024 and May 1, 2024. An objection was filed by Jeffrey Bowden [ECF No. 73]. The Court entered its ruling on the Plan and the objection at a hearing on May 15, 2024. The Court having heard and considered the evidence introduced at the hearing, the arguments of counsel, and the records in this case; now, therefore,

**THE COURT HEREBY FINDS AND CONCLUDES** that:

A.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     Notice of the confirmation hearing was provided to creditors and other parties in interest pursuant to Bankruptcy Rules 2002 and 3020, and the *Order Fixing Time for Filing*

**Page 1 of 6** –     ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

*Acceptances or Rejections of Plan; and Notice of Confirmation Hearing* (the "Order Fixing Time") [ECF No. 64]; such notice was reasonable, adequate, and sufficient.

C.      Ballots were transmitted and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Order Fixing Time.  Votes for acceptance of the Plan were solicited in good faith and in compliance with Sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3018.

D.      The Plan, subject to the terms set out immediately below, complies with the applicable provisions of the Bankruptcy Code and satisfies Section 1129(a)(1) of the Bankruptcy Code.  The Plan complies with the classification and other requirements of Bankruptcy Code Sections 1122 and 1123.

E.      Debtor has complied with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, and has satisfied Section 1129(a)(2) of the Bankruptcy Code.

F.      The Plan was proposed in good faith and not by any means forbidden by law, and Section 1129(a)(3) of the Bankruptcy Code has been satisfied.

G.      Section 1129(a)(4) of the Bankruptcy Code has been satisfied because all of Debtor's payments for services or costs and expenses have been approved or will be made with Court approval.

H.      Debtor has disclosed the identity and affiliation of any individual proposed to serve, after confirmation of the Plan, as a director or officer of Reorganized Debtor, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy.  Debtor has disclosed the identity of any insider that will be employed or retained by Reorganized Debtor and the nature of any compensation for such insider.  Therefore, Bankruptcy Code Section 1129(a)(5) has been satisfied.

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

I.      No governmental regulatory commission has jurisdiction over the rates of Debtor, and Bankruptcy Code Section 1129(a)(6) is not applicable.

J.      Bankruptcy Code Section 1129(a)(7) has been satisfied because each holder of a Claim in an impaired class of claims has accepted the Plan or will receive or retain under the Plan on account of such Claim property of a value as of the Effective Date of the Plan that is not less than the amount such holder would receive or retain if Debtor was liquidated under Chapter 7.

K.      Bankruptcy Code Section 1129(a)(8) has not been satisfied because all impaired classes did not accept the Plan.  Nonetheless, the Plan is confirmed because it meets the requirements of Bankruptcy Code Sections 1191(b), because it does not discriminate unfairly and is fair and equitable.

L.      Bankruptcy Code Section 1129(a)(9)(A) is satisfied because the Plan provides that Administrative Expense Claims will be paid in full in cash on the later of the Effective Date or the date on which such Claims are approved by the Court, unless different treatment is agreed to.  Section 1129(a)(9)(B) does not apply.  Sections 1129(a)(9)(C) and (D) are satisfied because the Plan provides for payment in full of Washington County's Allowed Claims over a period not later than five years after the Petition Date and in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan.

M.      At least one class of impaired claims has accepted the Plan and Bankruptcy Code Section 1129(a)(10) is satisfied.

N.      Bankruptcy Code Section 1129(a)(11) is satisfied because confirmation of the Plan is not likely to be followed by the liquidation or further financial reorganization of Debtor.

O.      All fees payable under 28 U.S.C. § 1930 have been paid or, pursuant to 28 U.S.C. § 1930(a)(6)(A) and (B), in a case under Subchapter V, Debtor does not pay such fees.  The Plan, therefore, satisfies Bankruptcy Code Section 1129(a)(12).

P.      Bankruptcy Code Sections 1129(a)(13) – (16) do not apply to the Plan.

**Page 3 of 6** –    ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION

**IT IS HEREBY ORDERED** that:

1.      The Plan, a copy of which is attached hereto as **Exhibit 1**, is confirmed in all respects pursuant to 11 U.S.C. §§ 1129(a) and 1191(b).  All objections have either been overruled or are addressed in this Order.  Capitalized terms used but not defined in this Order shall have the meaning assigned to them in the Plan.

2.      The Plan is hereby amended as follows:

a.      The last sentence of Section 6.2 is stricken and replaced with:  "On the 21st day following the end of each calendar quarter, Debtor shall provide quarterly financial reports to PacWest reflecting Debtor's revenue and expenses and including evidence of insurance and property taxes paid.  Debtor's obligation to maintain a minimum debt service coverage ratio shall be stricken.  Except as provided for in the Plan, the terms of PacWest's loan documents with Debtor shall remain in effect."

b.       The last sentence of Section 13.6 is revised to state: "Notwithstanding anything herein, Debtor reserves the right to prepay Allowed Claims without penalty."

c.      Section 13.8 is revised to state:  "In the event and to the extent that any provision of the Plan is inconsistent with any other instrument or agreement incorporated into or contemplated to be executed pursuant to the Plan, the provisions of the Plan shall control and take precedence."

d.      Section 13.10 is added to state:  "Pursuant to Bankruptcy Code Section 1123(a)(6), the charter of Debtor or its successor will prohibit the issuance of nonvoting equity securities."

e.      Section 13.11 is added to state:  "Pursuant to Debtor's Second Amended and Restated Operating Agreement, no distribution may be made to [Debtor's] Member, if after giving effect to the distribution, in the judgment of the Member, either (1) [Debtor] would not be able to pay its debts as they become due in the ordinary course of business or (2) the fair value of the total assets of [Debtor] would not at least equal its total liabilities."

**Page 4 of 6** –    ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION

3.      This Court shall retain jurisdiction to resolve any controversy or claim as set forth in the Plan.

4.      All claims and causes of action of Debtor or Debtor's estate, including all claims and causes of action arising from or under Chapter 5 of the Bankruptcy Code, are expressly preserved.  This Order shall not be a bar, nor have any adverse effect due to issues of standing, res judicata, or otherwise, to the Reorganized Debtor's pursuit of such claims and causes of action.

5.      Debtor, Reorganized Debtor, and their agents and officers, are hereby authorized and directed to take all actions, and enter into and execute all documents, reasonably necessary or appropriate to effectuate the Plan and to consummate the transactions contemplated by the Plan or this Order.

6.      Pursuant to 11 U.S.C. § 1191(b), confirmation of this Plan does not discharge any debt provided for in his Plan until the Bankruptcy Court grants a discharge on completion of all payments due pursuant to the Plan.

7.      If there is any conflict between the Plan and this Order, the terms of this Order shall control.

8.      To the extent any provision designated herein as a finding of fact is more properly characterized to be a conclusion of law, it shall be so deemed, and vice versa.

9.      This Order shall be deemed to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

# # #

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

I certify that I have complied with the requirements of LBR 9021-1(a).

Presented by:

TONKON TORP LLP


By /s/ Ava Schoen
    Ava Schoen, OSB No. 044072
    Timothy J. Conway, OSB No. 851752
    888 SW Fifth Avenue, Suite 1600
    Portland, OR 97204-2099
    Telephone:    (503) 221-1440
    Facsimile:    (503) 274-8779
    Email:    ava.schoen@tonkon.com
    Attorneys for Debtor

**Page 6 of 6** –   ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

Case 23-32834-thp11    Doc 107    Filed 05/23/24

1 | Ava Schoen, OSB No. 044072
2 |     Direct Dial: (503) 802-2143
  |     Email: ava.schoen@tonkon.com
3 | Timothy J. Conway, OSB No. 851752
  |     Direct Dial: (503) 802-2027
4 |     Email: tim.conway@tonkon.com
  | Tonkon Torp LLP
5 | 888 SW Fifth Ave., Suite 1600
  | Portland, OR 97204
6 | Main: 503.221.1440
  | Facsimile: 503.274.8779
7 |
  |     Attorneys for Debtor
8 |
9 |
10 |
11 |                    UNITED STATES BANKRUPTCY COURT
12 |                          DISTRICT OF OREGON
13 | In re                                    Case No. 23-32834-thp11
14 | Magno, L.L.C.                            **DEBTOR'S PLAN OF**
   |                                          **REORGANIZATION PURSUANT TO**
   |                                          **SUBCHAPTER V UNDER CHAPTER**
15 |                  Debtor.                 **11 (MARCH 5, 2024)**
16 |
17 |         Magno, L.L.C., as debtor and debtor-in-possession ("Debtor"), proposes the following
18 | Plan of Reorganization Pursuant to Subchapter V under Chapter 11 pursuant to Section 1189 of
19 | Title 11 of the United States Code.
20 |         This Plan provides for the repayment of Debtor's obligations to its Creditors. As set forth
21 | in greater detail in Articles 3-6, the Plan provides for payment to all Creditors in the full amount
22 | of their Allowed Claims.
23 |         Because Debtor constitutes a "small business debtor" under Section 101(51D) of the
24 | Bankruptcy Code that has elected to be administered pursuant to Subchapter V of the Bankruptcy
25 | Code, Debtor is not required to obtain approval of a disclosure statement prior to soliciting votes
26 |

**Page 1 of 24 –** DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER
CHAPTER 11

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 1 of 26**

1    from Creditors and Interest Holders unless the Bankruptcy Court, for cause, orders otherwise.

2    The Bankruptcy Court has not done so.

3        Debtor seeks your vote to accept the Plan. If you have questions about how your Claim

4    or Interest is being treated under the Plan, Debtor recommends that you discuss the Plan with an

5    attorney.

6        Your ballot stating how you are voting on the Plan must be received by Debtor, c/o

7    Tonkon Torp, LLP, Attn: Ava Schoen, 888 SW Fifth Ave., Suite 1600, Portland, OR 97204, no

8    later than April 23, 2024. If the Plan is confirmed, you will receive a distribution on account of

9    your Allowed Claim and will be subject to the injunction imposed by the Confirmation Order.

10       In addition to casting your vote to accept or reject the Plan, you may object to

11   confirmation of the Plan. If you wish to object to confirmation of the Plan, you must do so by

12   April 23, 2024.

13       The confirmation hearing will be held on April 30, 2024 at 1:00 PM. The location of the

14   hearing will be at US Bankruptcy Court, Courtroom #4, 1050 SW 6th Ave., 7th Floor, Portland,

15   OR 97204.

16                                **ARTICLE 1**

17                                **DEFINITIONS**

18       Definitions of certain terms used in this Plan are set forth below. Other terms are defined

19   in the text of this Plan. In either case, when a defined term is used, the first letter of each word in

20   the defined term is capitalized. Terms used and not defined in this Plan shall have the meanings

21   given in the Bankruptcy Code or Bankruptcy Rules, or otherwise as the context requires. The

22   meanings of all terms shall be equally applicable to both the singular and plural, and masculine

23   and feminine forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder,"

24   and others of similar import, refer to the Plan as a whole and not to any particular section,

25   subsection or clause contained in the Plan. Captions and headings to articles, sections and

26   exhibits are inserted for convenience of reference only and are not intended to be part of or to

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 2 of 26**

1    affect the interpretation of the Plan. The rules of construction set forth in Section 102 of the

2    Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the

3    Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Any capitalized term that is not

4    defined herein but is defined in the Bankruptcy Code shall have the meaning ascribed to such

5    term in the Bankruptcy Code.

6        1.1      "Administrative Expense Claim" means any Claim entitled to the priority afforded

7    by Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

8        1.2      "Allowed" means, when used to modify the term Claim or Administrative

9    Expense Claim, either a proof of which has been properly Filed or, if no Proof of Claim was so

10    Filed, which was or hereafter is listed on the Schedules as liquidated in amount and not disputed

11    or contingent or an Administrative Expense Claim that Debtor has received by the applicable bar

12    date, and, in each case, a Claim or Administrative Expense Claim as to which no objection to the

13    allowance thereof, or motion to estimate for purposes of allowance, shall have been Filed on or

14    before any applicable period of limitation that may be fixed by the Bankruptcy Code, the

15    Bankruptcy Rules and/or the Bankruptcy Court, or as to which any objection, or any motion to

16    estimate for purposes of allowance, shall have been so Filed, to the extent (a) such objection is

17    resolved between such Claimant and either Debtor or Reorganized Debtor or (b) such claim is

18    allowed by a Final Order.

19        1.3      "Allowed Secured Claim" means an Allowed Claim that is secured by a lien,

20    security interest, or other charge against or interest in property in which Debtor has an interest or

21    that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as

22    set forth in the Plan, or if no value is specified, as determined in accordance with Section 506(a)

23    of the Bankruptcy Code or, if applicable, Section 1111(b) of the Bankruptcy Code) of the interest

24    of the holder of such Claim in Debtor's interest in such property or to the extent of the amount

25    subject to setoff, as the case may be.

26

**Page 3 of 24 –**    DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER
           CHAPTER 11

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 3 of 26**

1      1.4    "Allowed Unsecured Claim" means an Allowed Claim that is not an Allowed

2  Secured Claim or an Allowed Administrative Expense Claim.

3      1.5    "Avoidance Actions" means, without limitation, any and all actions, causes of

4  action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims

5  and demands whatsoever, whether known or unknown, in law (including, without limitation,

6  Sections 506(c), 510, 542, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code or

7  equivalent provisions of applicable non-bankruptcy law), equity or otherwise.

8      1.6    "Bankruptcy Case" mean the case under Chapter 11 of the Bankruptcy Code with

9  respect to Debtor, pending in the District of Oregon, administered as *In re Magno, L.L.C..,* Case

10  No. 23-32834-thp11.

11      1.7    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended from

12  time to time, set forth in Sections 101 et seq. of Title 11 of the United States Code.

13      1.8    "Bankruptcy Court" means the United States Bankruptcy Court for the District of

14  Oregon, or such other court that exercises jurisdiction over the Bankruptcy Case or any

15  proceeding therein, including the United States District Court for the District of Oregon, to the

16  extent that the reference to the Bankruptcy Case or any proceeding therein is withdrawn.

17      1.9    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy

18  Procedure, as amended and promulgated under Section 2075, Title 28, of the United States Code,

19  and the local rules and standing orders of the Bankruptcy Court.

20      1.10   "Business Day" means a day other than a Saturday, Sunday, any legal holiday as

21  defined in Bankruptcy Rule 9006(a), or other day on which banks in Portland, Oregon are

22  authorized or required by law to be closed.

23      1.11   "Cash" means lawful currency of the United States of America and equivalents,

24  including, without limitation, checks, wire transfers and drafts.

25      1.12   "Claim" means (a) any right to payment from Debtor arising before the Effective

26  Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

**Page 4 of 24 –**   DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER
                CHAPTER 11

**EXHIBIT 1**
**Page 4 of 26**

1  contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

2  (b) any right to an equitable remedy against Debtor arising before the Effective Date for breach

3  of performance if such breach gives rise to a right of payment from Debtor, whether or not such

4  right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured,

5  disputed, undisputed, secured or unsecured.

6     1.13    "Class" means one of the classes of Claims defined in Article 5 hereof.

7     1.14    "Collateral" means any property in which Debtor has an interest that is subject to

8  a lien or security interest securing the payment of an Allowed Secured Claim.

9     1.15    "Confirmation Date" means the date on which the Confirmation Order is entered

10  on the docket by the Clerk of the Bankruptcy Court.

11     1.16    "Confirmation Order" means the order of the Bankruptcy Court confirming the

12  Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

13     1.17    "Creditor" means any entity holding a Claim against Debtor.

14     1.18    "Debtor" means Magno, L.L.C.. as Debtor and Debtor-in-Possession in the

15  Bankruptcy Case.

16     1.19    "Deficiency Claim" means the portion of a Secured claim that is unsecured.

17     1.20    "Disbursing Agent" means the individual responsible for making payments

18  pursuant to the Plan.

19     1.21 ·  "Disputed Claim" means a Claim with respect to which a Proof of Claim has been

20  timely Filed or deemed timely Filed under applicable law, and as to which an objection, timely

21  Filed, has not been withdrawn on or before the Effective Date or any date fixed for filing such

22  objections by order of the Bankruptcy Court, and has not been denied by a Final Order and

23  which Claim has not been estimated or temporarily allowed by the Bankruptcy Court on timely

24  motion by the holder of such Claim.  If an objection related to the allowance of only a part of a

25  Claim has been timely Filed or deemed timely Filed, such Claim shall be a Disputed Claim only

26  to the extent of the objection.

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 5 of 26**
Case 23-32834-thp11    Doc 65    Filed 03/11/24

1    1.22    "Effective Date" means the later of May 1, 2024 or the first day of the first full

2    month following the Confirmation Date.

3    1.23    "Entity" shall have the meaning ascribed to it by Section 101(15) of the

4    Bankruptcy Code.

5    1.24    "Filed" means filed with the Bankruptcy Court in the Bankruptcy Case.

6    1.25    "Final Order" means an order or judgment entered on the docket by the Clerk of

7    the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the

8    parties that has not been reversed, stayed, modified or amended and as to which the time for

9    filing a notice of appeal, or petition for certiorari or request for certiorari, or request for rehearing

10   shall have expired.

11   1.26    "General Unsecured Claim" means an Unsecured Claim that is not an

12   Administrative Claim, a Secured Claim, a Tax Claim, or an Other Priority Claim.

13   1.27    "Insider" shall have the meaning ascribed to it by Section 101(31) of the

14   Bankruptcy Code.

15   1.28    "Interests" means all rights of the owners of the membership interest of Debtor.

16   1.29    "Other Priority Claim" means any Claim for an amount entitled to priority in right

17   of payment under Section 507(a)(3), (4), (5) (6) or (7) of the Bankruptcy Code.

18   1.30    "Petition Date" means December 4, 2023, the date on which the petition

19   commencing this Bankruptcy Case was Filed.

20   1.31    "Plan" means this Plan of Reorganization, as amended, modified, restated or

21   supplemented from time to time.

22   1.32    "Priority Tax Claim" means a Claim of a governmental unit of the kind entitled to

23   priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to

24   priority but for the secured status of the Claim.

25   1.33    "Real Property" means the real property located at 8800 SW Commercial St.,

26   Tigard, OR and 12970 SW Hall Blvd., Tigard, OR.

**Page 6 of  24 –**    DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER
                CHAPTER 11

**EXHIBIT 1**
**Page 6 of 26**

1.34  "Rejection Claim" means a Claim entitled to be filed as a result of Debtor rejecting an executory contract in this Bankruptcy Case.

1.35  "Reorganized Debtor" means Debtor from and after the Effective Date.

1.36  "Schedules" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs Filed by Debtor pursuant to Section 521 of the Bankruptcy Code, as amended, modified, restated or supplemented from time to time.

1.37  "Scheduled Amounts" means the Claim amounts as set forth in Debtor's respective Schedules.

1.38  "Secured Claim" means any Claim against Debtor held by any entity, including, without limitation, an affiliate or judgment creditor of Debtor, to the extent such Claim constitutes a secured Claim under Sections 506(a) or 1111(b) of the Bankruptcy Code.  The unsecured portion, if any, of such Claim shall be treated as an Unsecured Claim.

1.39  "Subchapter V Trustee" means Kenneth Eiler, the Subchapter V trustee appointed pursuant to Section 1183(a) of the Bankruptcy Code and whose duties are prescribed under Section 1183(b) of the Bankruptcy Code, the Plan, or the order confirming the Plan.

1.40  "Unsecured Claim" means a Claim that is not an Administrative Claim, a Secured Claim, a Tax Claim, or an Other Priority Claim.

1.41  "Unsecured Creditor" means a holder of an Allowable Unsecured Claim.

## ARTICLE 2

**A.    History of Debtor's Business Operations**

Debtor owns a 29,827 square foot light industrial warehouse located at 12970 SW Hall Blvd., Tigard, Oregon 97223 (the "Hall Blvd. Property"), and two industrial warehouses (24,072 square foot and 15,000 square foot, respectively) located at 8800 Commercial Street, Tigard, Oregon 97223 (the "Commercial St. Property," together with the Hall Blvd. Property, the "Real Property").

Page 7 of 24 –  DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER
CHAPTER 11

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 7 of 26**

Case 23-32834-thp11    Doc 65    Filed 03/11/24

1    Debtor purchased the Hall Blvd Property in approximately 1999; Debtor purchased the

2    Commercial St. Property in approximately 1987.  Debtor is also the landlord at the Real Property.

3    The Hall Blvd. Property is currently leased to two long-term tenants: Finishing First, LLC

4    ("Finishing First") and Tigard Winsupply ("Winsupply").  Finishing First has been a tenant since

5    2000; Winsupply has been a tenant since 2012.  Each of them has a current lease with Debtor.

6    The Commercial St. Property is currently leased to long-term tenant, Magno-Humphries,

7    Inc. ("MHI"), which is an affiliated entity of Debtor.  MHI has been a tenant since 1987.  For the

8    last several years, MHI has been on a month-to-month lease.  As of April 1, 2024, MHI is entering

9    into a five-year lease with Debtor.

10    In 2020, Debtor refinanced its debt on the Real Property and took out a loan in the principal

11    amount of $3,000,000 from Pacific West Bank ("PacWest") with a maturity date of September 5,

12    2030 (the "PacWest Loan").  As security for the PacWest Loan, Debtor executed a Deed of Trust

13    and Assignment of Rents pursuant to which PacWest was granted an interest in the Real Property

14    and all rents associated with the Real Property.

15    **B.    Events Leading to the Filing of the Chapter 11 Case**

16    Debtor was involved in litigation with former tenants, Bowden Enterprises and Jeffrey

17    Bowden (together or separately, "Bowden") beginning in approximately 1999 (the "Bowden

18    Litigation").  The Bowden Litigation ultimately resulted in judgments against Debtor to pay

19    Bowden's attorney fees.  Pursuant to Oregon law, the judgments against Debtor created a lien on

20    Debtor's Real Property.  Bowden asserts a claim for attorney fees in excess of the judgments.

21    Debtor paid over $220,000 towards the judgments owed to Bowden but the judgments

22    were not satisfied in full before the Petition Date.  In an attempt to collect on a Supplemental

23    Judgment in the principal amount of $68,077.56, Bowden arranged for a Washington County

24    Sheriff sale of the Commercial St. Property.  Debtor filed the Bankruptcy Case to stay the

25    Sheriff's sale and have the opportunity to confirm a plan of reorganization to repay all creditors

26    in full.

**Page 8 of  24 –**    DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER
                                CHAPTER 11

**EXHIBIT 1**
**Page 8 of 26**

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

C.    **Debtor's Post-Petition Performance**

Debtor filed for Chapter 11 protection on December 6, 2023, and elected to be administered pursuant to Subchapter V. On or about the Petition Date, Debtor filed applications to employ Tonkon Torp LLP ("Tonkon Torp") and Corbett Accounting Services LLC ("Corbett Accounting"), which applications were approved by the Court. Pursuant to a proposed stipulated order between Debtor and PacWest, the Court entered a stipulated order authorizing Debtor to use cash collateral. On January 23, 2024, the Court held a case management conference.

On January 26, 2024, Bowden filed a motion for relief from stay and a motion to extend the claim bar date, which motions were heard by the Court on February 13, 2024. Pursuant to the Court's Minute Order/Record of Proceedings:

> Creditor Jeffrey D. Bowden's motion for relief from stay (ECF No. 42) is DENIED, except to the extent that limited relief from stay is granted to allow Mr. Bowden, if he desires, to file allegations against the garnishee Magno-Humphries, Inc., in state court to preserve his rights before the 1-year statute of limitations runs.... Creditor Jeffrey D. Bowden's motion to extend time to file a proof of claim (ECF No. 43) is GRANTED in part. The deadline for Mr. Bowden to file his proof of claim is extended by 7 days, to February 21, 2024.

[ECF No. 59].

Prior to the commencement of the Bankruptcy Case, PacWest exercised its rights, pursuant to the Assignment of Rents, such that since May 2023, Finishing First and Winsupply have been paying rent directly to PacWest. Finishing First and Winsupply have continued to pay rent directly to PacWest after the Petition Date, which amounts are applied against the PacWest Loan. Since January 2024, Debtor has been collecting $17,500 per month in rent from MHI. Debtor continues to own and maintain the Real Property.

D.    **Liquidation Analysis.**

To confirm Debtor's Plan, the Court must find that all Creditors and Interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and Interest holders would receive in a Chapter 7 liquidation. Here, creditors will receive at least as much

**Page 9 of 24 –**    DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER
CHAPTER 11

**EXHIBIT 1**
**Page 9 of 26**

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

1  under the Plan as they would in a Chapter 7 liquidation because the Plan proposes to pay all

2  creditors in full.  A liquidation analysis is attached to the Plan as **Exhibit 1**.

3      E.    <u>**Ability to make future plan payments and operate without further**</u>

4            <u>**reorganization.**</u>

5      To confirm Debtor's Plan, it must show that it will have enough cash over the life of the

6  Plan to make the required Plan payments and maintain the Real Property.  Debtor has provided

7  projected financial information as **Exhibit 2**.

8      The final Plan payment is expected to be paid on the fifth anniversary of the Effective

9  Date.

10     **You should consult with your accountant or other financial advisor if you have any**

11 **questions pertaining to these projections.**

12                              **ARTICLE 3**

13                              **SUMMARY**

14     This Plan proposes to pay creditors of Debtor from rent paid by Debtor's tenants and

15 from the refinance or sale of the Real Property.

16     This Plan provides for three classes of secured claims; one class of priority unsecured

17 claims; one class of non-priority unsecured claims; and one class of Interest holders.

18     All classes of creditors will be paid in full.  This Plan also provides for the payment in

19 full of Administrative Expense Claims, as set out in Article 4.

20     All Creditors and Interest holders should refer to Articles 5 through 8 of this Plan for

21 information regarding the precise treatment of their claims.

22     **Your rights may be affected. You should read these papers carefully and discuss**

23 **them with your attorney, if you have one.  If you do not have an attorney, you may wish to**

24 **consult one.**

25

26

Page 10 of 24 – DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER
CHAPTER 11

**EXHIBIT 1**
**Page 10 of 26**

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440
Case 23-32834-thp11   Doc 65   Filed 03/11/24

1

**ARTICLE 4**

2

**UNCLASSIFIED CLAIMS**

3      Under Section 1123(a)(1), administrative expense claims and priority tax claims are not

4  in classes.

5      4.1      Administrative Expense Claims.

6          4.1.1.   Administrative Expense Claims representing obligations incurred in the

7  ordinary course of business by Debtor during the Bankruptcy Case shall be paid by Debtor or

8  Reorganized Debtor in the ordinary course of business and in accordance with any terms and

9  conditions of the particular transaction, and any agreements relating thereto.

10          4.1.2.   Administrative Expense Claims also include post-petition fees and

11  expenses allowed to professionals, including the Allowed Claims of Debtor's lawyers and

12  accountant employed upon Bankruptcy Court authority, and the Allowed Claim of the

13  Subchapter V Trustee.  These fees and expenses must be noticed to Creditors and approved by

14  the Bankruptcy Court prior to payment.

15              (a)      Subchapter V Trustee's Allowed Administrative Expense Claim

16                      will be paid in full on the Effective Date.

17              (b)      Corbett Accounting's Allowed Administrative Expense Claim will

18                      be paid in full on the Effective Date.

19              (c)      Tonkon Torp's Allowed Administrative Expense Claim will be

20                      paid first from any retainer held by Tonkon Torp on the Effective

21                      Date.  Tonkon Torp's Allowed Administrative Expense Claim that

22                      thereafter remains unpaid will be paid in the amount of $3,000 per

23                      month commencing on the first day of the first month following

24                      the Effective Date until Tonkon Torp's Allowed Administrative

25                      Expense Claim is paid in full.

26

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1
Page 11 of 26**

Case 23-32834-thp11    Doc 65    Filed 03/11/24

1    4.2    Priority Tax Claims. Each holder of an Allowed Priority Tax Claim shall be paid

2    by Debtor the full amount of its Allowed Priority Tax Claim on the later of the Effective Date or

3    the date the claim is Allowed.

4                                    **ARTICLE 5**

5                                **CLASSIFIED CLAIMS**

6             For purposes of this Plan, Claims and Interests are classified as provided below.  A Claim

7    is classified in a particular Class only to the extent that such Claim qualifies within the

8    description of the Class, and is classified in a different Class to the extent that such Claim

9    qualifies within the description of such different Class.

10    5.1    Class 1 (Other Priority Claims).  Class 1 consists of all Allowed Other Priority

11    Claims.

12    5.2    Class 2 (Pacific West Bank).  Class 2 consists of the Allowed Secured Claim of

13    PacWest.

14    5.3    Class 3 (Washington County).  Class 3 consists of the Allowed Secured Claim

15    Washington County.

16    5.4    Class 4 (Jeffrey Bowden).  Class 4 consists of the Allowed Secured Claim of

17    Jeffrey Bowden.

18    5.5    Class 5 (General Unsecured Claims).  Class 5 consists of all Allowed Unsecured

19    Claims other than Administrative Expense Claims and Priority Tax Claims.

20    5.6    Class 6 (Interests).  Class 6 consists of the equity Interests of Debtor.

21                                    **ARTICLE 6**

22    **TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS UNDER THE PLAN**

23    6.1    Class 1 (Other Priority Claims).  Class 1 is unimpaired.  Each holder of an

24    Allowed Class 1 Claim will be paid in full in Cash the amount of its Allowed Class 1 Claim, on

25    the latter of (a) the Effective Date or (b) the date on which such Claim becomes allowed, unless

26    such holder shall agree or has agreed to a different treatment of such Claim (including any

**Page 12 of 24** – DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER
                          CHAPTER 11

**EXHIBIT 1**
**Page 12 of 26**

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

1 | different treatment that may be provided for in any documentation, agreement, contract, statute,

2 | law or regulation creating and governing such Claim). Debtor does not believe there are any

3 | Class 1 Claims.

4 |       6.2   Class 2 (Pacific West Bank). Class 2 is impaired. PacWest will retain its security

5 | interest in and liens upon its Collateral with the same priority and to the same extent such

6 | security interest and liens had as of the Petition Date. PacWest's Claim will be an Allowed

7 | Secured Claim (including interest and fees as provided in section 506(b) of the Bankruptcy

8 | Code). PacWest's Allowed Secured Claim will be paid in full together with interest at a fixed

9 | rate of 9%. Commencing on the 10th day after the Effective Date and continuing on the 10th

10 | day of the following 59 months, PacWest will be paid equal, monthly amortizing payments of

11 | principal and interest based upon a 30-year amortization schedule with a balloon payment of the

12 | unpaid principal plus accrued interest due on the fifth anniversary of the Effective Date (the

13 | "Class 2 Payments"). Notwithstanding the foregoing, from the Effective Date through December

14 | 31, 2026, a portion of the Class 2 Payments will be paid to PacWest directly from Tigard

15 | Winsupply and Finishing First in an amount equal to the rent owing by Tigard Winsupply and

16 | Finishing First each month. The remainder of the Class 2 Payments will be paid to PacWest

17 | directly by Debtor. Debtor shall provide evidence to PacWest of payment of insurance and

18 | property taxes.

19 |       6.3   Class 3 (Washington County). Class 3 is impaired. Washington County will

20 | retain any security interests it has on its Collateral with the same priority to which it is entitled by

21 | law. As permitted by 11 U.S.C. § 1129(a)(9)(D), Washington County's Allowed Secured Claim

22 | will be paid in full within five years of the Petition Date together with interest at the statutory

23 | rate of 16%. Commencing on the Effective Date and continuing on the first day of the following

24 | 54 months (or such shorter period of time to the extent Washington County has been paid in

25 | full), Washington County will be paid equal, monthly payments of principal and interest. When

26 |

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 13 of 26**
Case 23-32834-thp11    Doc 65    Filed 03/11/24

1  Tonkon Torp's Allowed Administrative Expense Claim is paid in full, Washington County will

2  be paid an additional $3,000 per month until Washington County's Allowed Claim is paid in full.

3      6.4    Class 4 (Jeffrey Bowden). Class 4 is impaired. Jeffrey Bowden will retain his

4  liens upon his Collateral with the same priority and to the same extent such liens had as of the

5  Petition Date. Jeffrey Bowden's Allowed Secured Claim will be paid in full together with

6  interest at a fixed rate of 9%. Commencing on the Effective Date and continuing on the first day

7  of each month thereafter, Jeffrey Bowden will be paid monthly payments of interest only based

8  on a 20 year amortization schedule until all Allowed Administrative Expense Claims are paid in

9  full. On the first day of each month thereafter, Jeffrey Bowden will be paid equal, monthly

10  amortizing payments of principal and interest based on a continuing 20 year amortization

11  schedule, with a balloon payment of the unpaid principal plus accrued interest due on the fifth

12  anniversary of the Effective Date. When Washington County's Allowed Secured Claim is paid

13  in full, Jeffrey Bowden will be paid an additional $3,000 per month until Jeffrey Bowden's

14  Allowed Secured Claim is paid in full. At closing of a sale or refinance of the Real Property, or

15  upon otherwise being paid in full, Bowden shall (i) release his liens on the Real Property and file

16  full satisfactions of judgment in the Circuit Court for the State of Oregon for the County of

17  Washington in Case No. C990586CV and in Case No. C136320CV. Payment to Jeffrey

18  Bowden, as set forth herein, shall extinguish all of Bowden's causes of action, damages, costs,

19  attorney's fees, claims, or any other demands arising from or related to rents owing or paid in

20  connection with the Real Property.

21      6.5    Class 5 (General Unsecured Claims). Class 5 is impaired. Holders of Allowed

22  Class 5 Claims will be paid in full with interest at the federal judgment rate on the fifth

23  anniversary of the Effective Date.

24      6.6    Class 6 (Interests). Class 6 is unimpaired. All existing Interest holders shall

25  retain the Interests they held on account of their prior equity Interests.

26

**Page 14 of 24** – DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER
         CHAPTER 11

**EXHIBIT 1**
**Page 14 of 26**

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

1

**ARTICLE 7**

2

**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

3      7.1    <u>Disputed Claims; Objections to Claims</u>.  Only Claims that are Allowed shall be

4  entitled to distributions under the Plan.  Debtor reserves the right to contest and object to any

5  Claims and previously Scheduled Amounts, including, without limitation, those Claims and

6  Scheduled Amounts that are specifically referenced herein, are not listed in the Schedules, are

7  listed therein as disputed, contingent and/or unliquidated in amount, or are listed therein at a

8  different amount than Debtor currently believes is validly due and owing.  Unless otherwise

9  ordered by the Bankruptcy Court, all objections to Claims and Scheduled Amounts (other than

10  Administrative Expense Claims) shall be Filed and served upon counsel for Debtor and the

11  holder of the Claim objected to on or before the later of (a) 45 days after the Effective Date or

12  (b) 60 days after the date (if any) on which a Proof of Claim is Filed in respect of a Rejection

13  Claim or Deficiency Claim.  The last day for filing objections to Administrative Expense Claims

14  shall be set pursuant to a further order of the Bankruptcy Court.  All Disputed Claims shall be

15  resolved by the Bankruptcy Court, except to the extent that (a) Debtor may otherwise elect

16  consistent with the Plan and the Bankruptcy Code or (b) the Bankruptcy Court may otherwise

17  order.

18      7.2    <u>Subsequent Allowance of Disputed Claims</u>.  The holder of a Disputed Claim that

19  becomes Allowed in full or in part subsequent to the Effective Date shall receive Cash

20  distributions on the next distribution date set forth in its class following the allowance of such

21  Disputed Claim.

22      7.3    <u>Distributions</u>.  Reorganized Debtor will make initial and further distributions as

23  required by the Plan to all Allowed Claims.  No Cash or other property shall be distributed under

24  the Plan on account of any Disputed Claim, or a portion of any such Claim, unless and until such

25  Disputed Claim becomes an Allowed Claim.

26

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 15 of 26**

1       7.4    <u>De Minimis Post-Effective Payments</u>. If a Cash payment to be made to a holder

2  of an Allowed Claim after the Effective Date would be $20 or less in the aggregate, no such

3  payment will be made to the holder of such Claim, unless and until the aggregate distribution on

4  account of such Claim would be at least $20 at a subsequent distribution date.

5                    **ARTICLE 8**

6          **MEANS FOR EXECUTION OF PLAN**

7       8.1    <u>Revesting</u>. Except as otherwise expressly provided herein, on the Effective Date,

8  all property and assets of the estate of Debtor shall revest in Reorganized Debtor, free and clear

9  of all claims, liens, encumbrances, charges, and other Interests of Creditors arising on or before

10  the Effective Date, and Reorganized Debtor may operate, from and after the Effective Date, free

11  of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Court.

12       8.2    <u>Payment of Claims</u>. Reorganized Debtor will be the Disbursing Agent charged

13  with paying and will pay Allowed Claims pursuant to the Plan.

14       8.3    <u>Equity Interests</u>. All equity Interests in Debtor will remain in place as of the

15  Effective Date.

16       8.4    <u>Setoffs</u>. Debtor may, but shall not be required to, set off against any Claim and

17  distributions to be made pursuant to the Plan in respect of such Claim, any claims of any nature

18  whatsoever which Debtor may have against the holder of such Claim, but neither the failure to

19  do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such

20  claim Debtor may have against such holder.

21       8.5    <u>Corporate Action</u>. Upon entry of the Confirmation Order by the Clerk of the

22  Bankruptcy Court, all actions contemplated by the Plan shall be authorized and approved in all

23  respects (subject to the provisions of the Plan), including, without limitation, the execution,

24  delivery and performance of all documents and agreements relating to the Plan, if any, and any

25  of the foregoing. On the Effective Date, the appropriate officers of Reorganized Debtor are

26

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 16 of 26**

1   authorized and directed to execute and deliver the agreements, documents and instruments

2   contemplated by the Plan, if any, in the name of and on behalf of Reorganized Debtor.

3       8.6   <u>Saturday, Sunday, or Legal Holiday</u>.  If any payment or act under the Plan is

4   required to be made or performed on a date this is not a Business Day, then the making of such

5   payment or the performance of such act may be completed on the next Business Day, but shall be

6   deemed to have been completed as of the required date.

7       8.7   <u>Event of Default; Remedy</u>.  Any material failure by Reorganized Debtor to

8   perform a term of this Plan, which failure continues for a period of 30 days following receipt by

9   Reorganized Debtor, with a copy to Debtor's counsel, of written notice of such default from the

10  holder of an Allowed Claim to whom performance is due, shall constitute an Event of Default.

11  Upon the occurrence of an Event of Default, the holder of an Allowed Claim to whom

12  performance is due shall have all rights and remedies granted by law, this Plan or any agreement

13  between the holder of such Claim and Debtor or Reorganized Debtor.  An Event of Default with

14  respect to one Claim shall not be an Event of Default with respect to any other Claim.

15      8.8   <u>Feasibility of Plan</u>.  In order to confirm the Plan and for the Plan to become

16  effective on the Effective Date, the Bankruptcy Court must find that the Plan is feasible pursuant

17  to section 1129(a)(11) of the Bankruptcy Code, which requires the Bankruptcy Court to

18  determine that confirmation of the Plan is not likely to be followed by a liquidation or the need

19  for further financial reorganization of Debtor or any successor to Debtor, unless such liquidation

20  or reorganization is proposed in the Plan.  Debtor's Plan is a reorganization plan that does not

21  propose to liquidate assets or to further reorganize or reconstitute itself after the Effective Date.

22  Debtor's Plan will be funded by (i) rental income from its tenants and (ii) the refinance of the

23  Real Property or the sale of one or both of the Real Properties on or before the fifth anniversary

24  of the Effective Date, which will provide Reorganized Debtor with (i) sufficient available cash to

25  make distributions on account of Allowed Claims as set forth in the Plan and (ii) sufficient

26  capital to continue operations.

**Page 17 of  24** – DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER
        CHAPTER 11

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 17 of 26**

8.9     <u>Conditions Precedent to Effectiveness of Plan</u>. The following conditions must occur and be satisfied for the Plan to become effective, notwithstanding the Effective Date:

(a)     The Bankruptcy Court shall have entered the Confirmation Order, in the form and substance reasonably satisfactory to Debtor, which shall, among other things, (i) find that the Plan complies with all applicable requirements of the Bankruptcy Code, (ii) decree that the Confirmation Order shall supersede any court orders issued prior to the Confirmation Date that may be inconsistent therewith, and (iii) provide that any and all executory contracts and unexpired leases that are assumed and/or assigned pursuant to the Plan shall remain in full force and effect for the benefit of Reorganized Debtor, in each case, notwithstanding any provision in any such contract or lease or in applicable law (including those described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such transfer or that enables or requires termination or modification of such contract or lease.

(b)     All documents, instruments and agreements, if any, each in form and substance satisfactory to Debtor, provided for or necessary to implement this Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the party to be benefited thereby.

## ARTICLE 9

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1     <u>Assumption and Rejection</u>. Except as may otherwise be provided, all executory contracts and unexpired leases of Debtor which are not otherwise subject to a prior Bankruptcy Court order or pending motion before the Bankruptcy Court are assumed by Reorganized Debtor on the Effective Date; provided, however, that Debtor may file a notice of intent to reject any executory contract or unexpired lease at any time prior to the Effective Date. The Confirmation Order shall constitute an order authorizing assumption of all executory contracts and unexpired leases except those otherwise specifically rejected or otherwise provided for or subject to other Court Order or pending motion or notice. Reorganized Debtor shall promptly pay all amounts, if

**Page 18 of 24** – DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER CHAPTER 11

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 18 of 26**

Case 23-32834-thp11     Doc 65     Filed 03/11/24

1    any, required under Section 365 of the Bankruptcy Code to cure any defaults for executory

2    contracts and unexpired leases being assumed by performing its obligations from and after the

3    Effective Date in the ordinary course of business.

4        9.2    Assignment. To the extent necessary, all assumed executory contracts and

5    unexpired leases shall be deemed assigned to Reorganized Debtor as of the Effective Date. The

6    Confirmation Order shall constitute an order authorizing such assignment of assumed executory

7    contracts and unexpired leases, and no further assignment documentation shall be necessary to

8    effectuate such assignment.

9        9.3    Rejection Claims. Rejection Claims must be Filed no later than 30 days after the

10    entry of the order rejecting the executory contract or unexpired lease or 30 days after the entry of

11    the Confirmation Order, whichever is sooner. Any such Rejection Claim not Filed within such

12    time shall be forever barred from asserting such Claim against Debtor, Reorganized Debtor, its

13    property and estates. Each Rejection Claim resulting from such rejection shall constitute a

14    General Unsecured Claim.

15                        **ARTICLE 10**

16                    **EFFECT OF CONFIRMATION**

17        10.1    Debtor's Injunction. To the extent the Plan is confirmed pursuant to

18    Section 1191(a) of the Bankruptcy Code, the effect of confirmation shall be as set forth in

19    Section 1141 of the Bankruptcy Code. To the extent the Plan is confirmed pursuant to

20    Section 1191(b) of the Bankruptcy Code, the effect of confirmation shall be as set forth in

21    Section 1192 of the Bankruptcy Code. Except as otherwise provided in the Plan or in the

22    Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to

23    entities against (a) the commencement or continuation, including the issuance or employment of

24    process, of a judicial, administrative, or other action or proceeding against Reorganized Debtor

25    that was or could have been commenced before the entry of the Confirmation Order, (b) the

26    enforcement against Reorganized Debtor or its assets of a judgment obtained before the Petition

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 19 of 26**

1    Date, and (c) any act to obtain possession of or to exercise control over, or to create, perfect or

2    enforce a lien upon all or any part of the assets.

3                               **ARTICLE 11**

4                      **RETENTION OF JURISDICTION**

5        11.1    Notwithstanding the entry of the Confirmation Order, the Court shall retain

6    jurisdiction of this Chapter 11 Case pursuant to and for the purposes set forth in Section 1193(b)

7    of the Bankruptcy Code:

8                (a)      to classify the Claim or interest of any Creditor or stockholder, reexamine

9    Claims or Interests which have been owed for voting purposes and determine any objections that

10    may be Filed to Claims or Interests,

11               (b)      to determine requests for payment of Claims entitled to priority under

12    Section 507(a) of the Bankruptcy Code, including compensation and reimbursement of expenses

13    in favor of professionals employed in this Bankruptcy Case,

14               (c)      to avoid transfers or obligations to subordinate Claims under Chapter 5 of

15    the Bankruptcy Code,

16               (d)      to approve the assumption, assignment, or rejection of an executory

17    contract or an unexpired lease pursuant to this Plan,

18               (e)      to resolve controversies and disputes regarding the interpretation of this

19    Plan,

20               (f)      to implement the provisions of this Plan and enter orders in aid of

21    confirmation,

22               (g)      to determine the validity, priority, or extent of any claim or claim of lien,

23               (h)      to adjudicate adversary proceedings and contested matters pending or

24    hereafter commenced in this Bankruptcy Case, and

25               (i)      to enter a final decree closing this Bankruptcy Case.

26

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 20 of 26**

1    11.2    If the Bankruptcy Court abstains from exercising or declines to exercise

2    jurisdiction over any matter arising under, arising in, or related to the Chapter 11 Case, this

3    Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent

4    jurisdiction with respect to such subject matter.

5                                **ARTICLE 12**

6                          **ADMINISTRATIVE PROVISIONS**

7    12.1    Modification or Withdrawal of the Plan.  Debtor may modify the Plan at any time

8    before confirmation of the Plan pursuant to Section 1193(a) of the Bankruptcy Code.  If the Plan

9    is confirmed under Section 1191(a) of the Bankruptcy Code, Debtor may also seek to modify the

10   Plan at any time after confirmation only if (a) the Plan has not been substantially consummated

11   and (b) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

12   If the Plan is confirmed under section 1191(b), the Debtor may seek to modify the Plan at any

13   time over the term of the Plan.

14   12.2    Revocation or Withdrawal of Plan

15           12.2.1.    Right to Revoke.  Debtor reserves the right to revoke or withdraw the

16   Plan at any time prior to the Effective Date.

17           12.2.2.    Effect of Withdrawal or Revocation.  If Debtor revokes or withdraws the

18   Plan prior to the Effective Date, then the Plan shall be deemed null and void.  In such event,

19   nothing contained herein shall be deemed to constitute a waiver or release of any claims by or

20   against Debtor or any other Entity or to prejudice in any manner the rights of Debtor or any

21   Entity in any further proceeding involving Debtor.

22   12.3    Nonconsensual Confirmation.  Debtor shall request that the Bankruptcy Court

23   confirm the Plan pursuant to Section 1191(b) of the Bankruptcy Code if the requirements of all

24   provisions of Section 1129(a) of the Bankruptcy Code, except subsections 1129(a)(8), (10) and

25   (15) are met.

26

**EXHIBIT 1**
**Page 21 of 26**

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

1    **ARTICLE 13**

2    **MISCELLANEOUS PROVISIONS**

3        13.1    Rights of Action.  Except as otherwise expressly provided herein, any claims,

4    rights, interests, causes of action, defenses, counterclaims, cross-claims, third-party claims, or

5    rights of offset, recoupment, subrogation or subordination including, without limitation, claims

6    under Section 550(a) of the bankruptcy Code or any of the sections referenced therein (including,

7    without limitation, any and all Avoidance Actions) accruing to Debtor shall remain assets of

8    Reorganized Debtor.  Reorganized Debtor may pursue such rights of action, as appropriate, in

9    accordance with what is in its best interests and for its benefit.

10        13.2    Governing Law.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules

11    or other federal laws are applicable, the laws of the State of Oregon shall govern the construction

12    and implementation of the Plan, and all rights and obligations arising under the Plan.

13        13.3    Withholding and Reporting Requirements.  In connection with the Plan and all

14    instruments issued in connection therewith and distributions thereon, Debtor and Reorganized

15    Debtor shall comply with all withholding, reporting, certification and information requirements

16    imposed by any federal, state, local or foreign taxing authorities and all distributions hereunder

17    shall, to the extent applicable, be subject to any such withholding, reporting, certification and

18    information requirements.  Entities entitled to receive distributions hereunder shall, as a

19    condition to receiving such distributions, provide such information and take such steps as

20    Reorganized Debtor may reasonably require to ensure compliance with such withholding and

21    reporting requirements, and to enable Reorganized Debtor to obtain the certifications and

22    information as may be necessary or appropriate to satisfy the provisions of any tax law.

23        13.4    Time.  Unless otherwise specified herein, in computing any period of time

24    prescribed or allowed by the Plan, the day of the act or event from which the designated period

25    begins to run shall not be included.  The last day of the period so computed shall be included,

26

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 22 of 26**

1 | unless it is not a Business Day, in which event the period runs until the end of the next

2 | succeeding day which is a Business Day.

3 |     13.5   <u>Severability</u>. In the event that any provision of the Plan is determined to be

4 | unenforceable, such determination shall not limit or affect the enforceability and operative effect

5 | of any other provisions of the Plan. To the extent that any provision of the Plan would, by its

6 | inclusion in the Plan, prevent or preclude the Bankruptcy Court from entering the Confirmation

7 | Order, the Bankruptcy Court, on the request of Debtor, may modify or amend such provision, in

8 | whole or in part, as necessary to cure any defect or remove any impediment to the confirmation

9 | of the Plan existing by reason of such provision.

10 |     13.6   <u>Binding Effect</u>. The provisions of the Plan shall bind Debtor, Reorganized Debtor

11 | and all holders of Claims and Interests, and their respective successors, heirs and assigns.

12 | Notwithstanding anything herein, Debtor reserves the right to prepay Allowed Claims.

13 |     13.7   <u>Recordable Order</u>. The Confirmation Order shall be deemed to be in recordable

14 | form, and shall be accepted by any recording officer for filing and recording purposes without

15 | further or additional orders, certifications or other supporting documents.

16 |     13.8   <u>Plan Controls</u>. In the event and to the extent that any provision of the Plan is

17 | inconsistent with any other instrument or agreement contemplated to be executed pursuant to the

18 | Plan, the provisions of the Plan shall control and take precedence.

19 |     13.9   <u>Effectuating Documents and Further Transactions</u>. Debtor and Reorganized

20 | Debtor shall execute, deliver, file or record such contracts, instruments, assignments, and other

21 | agreements or documents, if any, and take or direct such actions, as may be necessary or

22 | appropriate to effectuate and further evidence the terms and conditions of this Plan.

23 | **ARTICLE 14**

24 | **DISCHARGE**

25 |     14.1   If Debtor's Plan is confirmed under 11 U.S.C. § 1191(a), on the Effective Date of

26 | the Plan, Debtor will be discharged from any debt that arose before confirmation of this Plan, to

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

**EXHIBIT 1**
**Page 23 of 26**

1   the extent specified in 11 U.S.C. § 1141(d)(1)(A) of the Code, except that Debtor will not be

2   discharged of any debt (i) imposed by this Plan; or (ii) to the extent provided in 11 U.S.C.

3   § 1141(d)(6).

4       14.2    If Debtor's Plan is confirmed under 11 U.S.C. § 1191(b), confirmation of this

5   Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a

6   discharge on completion of all payments due within the first three years of this Plan, or such

7   longer period not to exceed five years as fixed by the Court.  Debtor will not be discharged from

8   any debt (i) on which the last payment is due after the first three years of the plan, or such other

9   time not to exceed five years as fixed by the Court or (ii) excepted from discharge under § 523(a)

10  of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

11      DATED:  March 8, 2024.

12                          Respectfully submitted,

13                          MAGNO, L.L.C.

14

15                          By:  _/s/ Richard S. Humphries_____
                                 Richard S. Humphries, Manager
16

17  Presented by:
    TONKON TORP LLP
18

19  By /s/ Ava Schoen_____
        Ava Schoen, OSB No. 044072
20      Timothy J. Conway, OSB No. 851752
        888 SW Fifth Avenue, Suite 1600
21      Portland, OR 97204-2099
        Telephone:    (503) 221-1440
22      Facsimile:    (503) 274-8779
        Email:        ava.schoen@tonkon.com
23
    Attorneys for Debtor
24

25

26

**Page 24 of 24 –** DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SUBCHAPTER V UNDER
          CHAPTER 11

**EXHIBIT 1**
**Page 24 of 26**

TONKON TORP LLP
888 SW FIFTH AVE., SUITE 1600
PORTLAND, OR 97204
503.221.1440

## EXHIBIT 1 – LIQUIDATION ANALYSIS

| | |
|---|---|
| Total Assets (Value of Real Property): | 9,268,830[1] |
| | |
| Less Broker Fees and closing costs (6%) | (556,129.80) |
| Net Available to Creditors | 8,712,700.20 |
| | |
| Less Real Property Taxes Owing | (71,816.65) |
| Net Available to Creditors | 8,640,883.55 |
| | |
| Less Remaining Secured Claims | |
| PacWest | (2,986,763.27)[2] |
| Bowden | (127,919.18)[3] |
| | |
| Net Available After Payment of Secured Claims | 5,526,201.10 |
| | |
| Less Unsecured Priority Claims | (100.00)[4] |
| Net Available After Payment of Priority Claims | 5,526,101.10 |
| | |
| Total General Unsecured Claims | 169,808.98[5] |
| | |
| Total Distributions to Unsecured Creditors | 100% |

---

[1] Amount is real market value for Real Property as set out in 2023 Washington County property tax statements.

[2] Amount based on Proof of Claim 1 filed by PacWest.

[3] Amount based on Proof of Claim 3 filed by Bowden; subject to objection.

[4] Amount based on Amended Proof of Claim 4 filed by IRS; subject to objection.

[5] Unsecured Claims are based on Debtor's Schedule F and filed Proofs of Claim; subject to objection.

Majmo LLC
Cash Flow Projection
April 2024 to May 2029

| Account | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 | Total | Financial Notes |
|---|---|---|---|---|---|---|---|---|
| **Capital Income** | | | | | | | | |
| Majmo-Humphries Inc | 157,500.00 | 214,200.00 | 218,484.00 | 222,853.68 | 227,310.75 | 96,607.06 | 1,136,955.49 | |
| Finishing First | 96,300.00 | 132,000.00 | 135,660.00 | 138,312.00 | 141,078.24 | 59,958.25 | 703,248.49 | Rental income from Finish First and Tigard WinSupply is being paid directly to PacWest Bank for years 2024 through 2026. |
| Tigard Winsupply | 57,375.00 | 78,799.92 | 81,099.96 | 82,721.96 | 84,376.44 | 35,859.99 | 420,233.27 | |
| Total Rental Income | 311,175.00 | 424,999.92 | 435,183.96 | 443,887.64 | 452,765.43 | 192,425.30 | 2,260,437.25 | |
| **Expenses** | | | | | | | | |
| Insurance expense | 5,081.97 | 7,615.25 | 8,757.55 | 10,071.17 | 11,581.86 | 5,162.47 | 48,270.26 | |
| Professional Fees | 36,000.00 | 24,000.00 | 15,000.00 | 12,000.00 | 30,000.00 | 20,000.00 | 137,000.00 | |
| Property tax expense | 23,905.70 | 24,622.87 | 25,361.56 | 26,122.41 | 26,906.08 | 0.00 | 126,918.62 | |
| Repairs and maintenance | 8,715.00 | 12,736.45 | 14,500.00 | 12,780.64 | 12,804.06 | 5,828.18 | 67,364.33 | |
| Miscellaneous | 4,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 2,500.00 | 30,500.00 | |
| Total Operating Expenses | 77,702.67 | 74,974.58 | 69,619.11 | 66,974.21 | 87,292.00 | 33,490.65 | 410,053.21 | |
| **Loan Payments to Creditors** | | | | | | | | |
| PacWest Bank Secured Claim | 192,257.36 | 288,386.04 | 288,386.04 | 288,386.04 | 288,386.04 | 2,981,319.39 | 4,327,120.91 | May 2029 Balloon payment assumes either refinancing or property sale. |
| Golden Secured Claim | 7,675.12 | 11,512.68 | 11,767.39 | 26,569.20 | 50,569.20 | 72,499.07 | 180,592.66 | May 2029 Balloon payment assumes either refinancing or property sale. |
| Washington County Secured Claim | 14,806.72 | 22,210.08 | 25,210.08 | 35,333.44 | 0.00 | 0.00 | 97,560.32 | |
| Tonkon Torp Admin. Claim | 81,231.50 | 36,000.00 | 33,000.00 | 0.00 | 0.00 | 0.00 | 150,231.50 | May 2024 – retainer of $80,231.50 released to Tonkon Torp in partial payment of its Allowed Administrative Expense Claim. This is a non-cash item for the projections. Additionally, the balance of Tonkon Torp's Allowed Administrative Expense Claim is projected to be paid at $3,000/month from June 2024 through November 2026. |
| Tonkon Torp Admin. Claim Non-Cash Item | (60,231.50) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (60,231.50) | |
| Obelt Accounting Admin. Claim | 15,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,000.00 | |
| Schachter U Trustee Admin. Claim | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | |
| Unsecured Claims | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 188,343.00 | 188,343.00 | May 2029 Balloon payment assumes either refinancing or property sale. |
| Total Payments to Creditors | 260,739.20 | 358,108.80 | 358,363.51 | 350,288.68 | 338,955.24 | 3,242,161.46 | 4,908,616.89 | |
| | (27,266.87) | (8,083.46) | 7,201.34 | 26,624.74 | 26,518.20 | (3,083,226.81) | (3,056,232.85) | |
| Beginning Cash | 52,426.22 | 25,159.35 | 17,075.89 | 24,277.23 | 50,901.98 | 77,420.18 | 77,420.18 | |
| Ending Cash | 25,159.35 | 17,075.89 | 24,277.23 | 50,901.98 | 77,420.18 | (3,005,806.63) | (3,005,806.63) | |
| Fair Market Value of Real Property | | | | | | 9,268,830.00 | 9,268,830.00 | Amount is real market value for Real Property as set out in 2023 Washington County property tax statements. |